FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 24, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

MATTHEW W.,[1]

Plaintiff,

vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[2]

Defendant.

No. 1:19-cv-03008-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 13, 16

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 16. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 13, and grants Defendant's motion, ECF No. 16.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 25, 2012, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of November 20, 2001. Tr. 184-89. The application was denied initially, Tr. 107-18, and on reconsideration, Tr. 122-31. Plaintiff appeared before an administrative law judge (ALJ) on October 29, 2013. Tr. 40-86. On November 19, 2013, the ALJ denied Plaintiff's claim. Tr. 18-37.

Plaintiff appealed the ALJ's decision and pursuant to a stipulation by the parties, the case was remanded. Tr. 483-99. The Appeals Council directed the ALJ to re-evaluate the opinion evidence, obtain additional evidence regarding Plaintiff's mental impairments, re-evaluate Plaintiff's subjective complaints, give further consideration to Plaintiff's residual functional capacity (RFC) and obtain

supplemental evidence from a vocational expert, if warranted.  Tr. 503-04.

Plaintiff appeared at a remand hearing on June 7, 2017.  Tr. 389-429.  On October

30, 2017, the ALJ again denied Plaintiff's claim.  Tr. 354-82.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since January 25, 2012.  Tr. 360.  At

step two, the ALJ found that Plaintiff has the following severe impairments:

depressive disorder, anxiety related disorder, post-traumatic stress disorder

(PTSD), personality disorder, and borderline intellectual function (BIF).  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of a listed

impairment.  Tr. 361. The ALJ then concluded that Plaintiff has the RFC to

perform a full range of work at all exertional levels but with the following

limitations:

> [Plaintiff] could perform simple, routine tasks and follow short,
> simple instructions.  He could do work that needs little or no judgment
> and could perform simple duties that can be learned on the job in a
> short period.  He requires a work environment with minimal
> supervisor contact.  (Minimal contact does not preclude all contact.
> Rather it means contact does not occur regularly.  Minimal contact
> also does not preclude simple and superficial exchanges and it does
> not preclude being in proximity to the supervisor).  He can work in
> proximity to co-workers but not in a cooperative or team effort.  He
> requires a work environment with no public contain [sic] and no more
> than superficial interaction with co-workers.  He requires a work
> environment that is predictable and with few work setting changes.
> He requires a job in which he would not set his own goals, but he is
> capable of meeting employer-established goals.

Tr. 363.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 374. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as industrial cleaner, kitchen helper and laundry worker II. Tr. 374. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. Tr. 375.

On December 17, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 328-30. Per 20 C.F.R. § 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated validity test results;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims;

ORDER - 8

ECF No. 13 at 2.

**DISCUSSION**

**A. Validity Test Results**

Plaintiff argues the ALJ improperly considered the results of validity tests. ECF No. 13 at 3-7. Plaintiff asserts that the results should not have been considered when analyzing Plaintiff's statements and the examining psychologists' statements. *Id.* The arguments regarding medical opinions and Plaintiff's statements are addressed *infra*.

Evidence of malingering is relevant to an ALJ's determination. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). A specific finding of malingering is not required; affirmative evidence suggesting malingering is sufficient. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n. 1 (9th Cir. 2008). Evidence that suggests malingering includes invalid test scores, scores that indicate exaggeration/distortion, and statements from examining doctors that indicate the doctor believes the claimant is malingering. *Bahram H. v. Comm'r of Soc. Sec.*, No. 3:18-CV-05152-BAT, 2018 WL 6809487, at *2 (W.D. Wash. Dec. 27, 2018); *Gopher v. Comm'r of Soc. Sec.*, 281 F. Supp. 3d 1102, 1117 (E.D. Wash. 2017). An ALJ may accept the opinion of a doctor who found a claimant was malingering, even if other doctors believe the claimant is not malingering. *Bahram H.*, 2018

WL 6809487, at *5-6; *Bell v. Berryhill*, No. C17-5441 RSL, 2018 WL 1102167, at *2–3 (W.D. Wash. Feb. 28, 2018).

Here, the ALJ considered evidence from multiple examining and reviewing sources. The ALJ determined that the evidence from these sources, along with the overall record and Plaintiff's inconsistent testimony, suggested Plaintiff was over reporting his symptoms and limitations. Tr. 368.

First, the ALJ considered Dr. L. Paul Schneider's report. Tr. 366. In October of 2011, Dr. Schneider administered several tests, including a Minnesota Multiphasic Personality Inventory-2 (MMPI-2), to Plaintiff. Tr. 251. During the testing, Dr. Schneider observed Plaintiff was agitated, with pressured speech, labile and clearly anxious. Tr. 249. Dr. Schneider felt Plaintiff put forth good effort on testing and that the results were valid and reliable indicators of Plaintiff's functioning. *Id.* On the Weschler Adult Intelligence Scale-Third Edition (WAIS-III), Plaintiff's verbal and full-scale IQs were in the low average range, while is performance IQ was borderline. *Id.* On the MMPI-2, Plaintiff's scores indicated an "invalid profile", as his endorsements on the frequency scale were "extremely high, off the chart, which is basically considered a strong over-reporting." Tr. 251. Dr. Schneider felt the scores were invalid and not interpretable, but that they indicated Plaintiff feels he has few coping skills and not much is going well for him. *Id.*

The ALJ also considered and credited the opinion of Dr. Peterson, a reviewing doctor, whose opinion the ALJ found was supported by the record. Tr. 369-70. The ALJ reasoned Dr. Peterson's opinion was supported by Plaintiff's inconsistent testimony and Dr. Cline's testing. Tr. 367. Dr. Peterson reviewed Dr. Schneider's report and opined that Dr. Schneider took an "advocate role" and minimized the obvious findings, such as Plaintiff over reporting his dysfunction. Tr. 100. He noted that another reviewing doctor, Dr. Colby, had also reviewed Dr. Schneider's report and found that Dr. Schneider's conclusions were not fully supported by medical evidence. *Id.*

Second, the ALJ considered Dr. Cline's evaluation. Tr. 367. On January 25, 2017, Dr. R.A. Cline performed a psychological exam, at the request of the Department of Social and Health Services (DSHS). Tr. 863-67. Dr. Cline believed Plaintiff was malingering and indicated that individuals in such context typically malinger to try to obtain benefits. Tr. 864-65. Dr. Cline performed a mental status exam and found Plaintiff recalled three out of three items immediately but could not recall any after a short delay. Tr. 867. With categorical cues, he recalled one item. *Id.* Plaintiff performed four digits forward and four backward, could not complete serial sevens, but completed serial threes. *Id.* Dr. Cline found Plaintiff's performance on the tasks inconsistent. *Id.*

During her examination, Dr. Cline performed two validity tests, the Rey and the ToMM. Tr. 863. While Plaintiff's results on the Rey indicated he was cooperating and not malingering, his scores on the ToMM provided "robust evidence that this claimant is indeed malingering at this time." *Id.* A score between 45 and 50 indicates non-malingering, while Plaintiff scored 28 and 29 on the two trials. *Id.* The ALJ found Dr. Cline's determination that Plaintiff was malingering, potentially to obtain benefits, was consistent with Dr. Peterson's analysis. Tr. 367.

Third, the ALJ considered Dr. Genthe's evaluation, which indicated symptom exaggeration. *Id.* Dr. Thomas Genthe performed a psychological examination of Plaintiff on February 17, 2017, at the request of DSHS. Tr. 868-82. The record does not contain an explanation as to why a second exam was ordered less than a month after the prior exam, when DSHS exams or record reviews previously occurred no more than once per year. *See* Tr. 858-62 (2015 exam); Tr. 851-55 (2014 exam); Tr. 261-66 (2013 exam); Tr. 847-50 (2012 exam); Tr. 302-20 (2011 exam). Dr. Genthe administered several tests, including the Personality Assessment Inventory (PAI), which includes validity indices. Tr. 874. Plaintiff's results indicated he "may not have answered in a completely forthright manner", and that he may have exaggerated "certain problems." *Id.* He also "consistently endorsed items that portray himself in an especially negative or pathological

ORDER - 12

manner." *Id.* The results "potentially involve considerable distortion," which may be due to malingering, a cry for help, or other reasons. *Id.*

Dr. Genthe did not diagnose malingering but stated it was possible Plaintiff was exaggerating his mental health problems and suggested the results be shared with Plaintiff's treating providers for their assessment of the results. Tr. 367, 871. The ALJ observed that Dr. Genthe did not have access to Dr. Cline's prior finding of malingering. Tr. 367.

Fourth, the ALJ considered the inconsistencies in Plaintiff's testimony. Tr. 368. Theses inconsistencies included testifying that he could not attend appointments due to not knowing the provider, followed with testifying he could attend appointments if his brother was in the room, and then testifying he attended appointments with his brother, but his brother was not in the room. Tr. 365-66. The ALJ reasoned that the inconsistent testimony, along with the overall record, was suggestive of Plaintiff over reporting his symptoms and limitations. Tr. 368.

Plaintiff contends that the ALJ erred in engaging in "heavy reliance" on the validity testing. ECF No. 13 at 7. Plaintiff relies on the Social Security Administration's (SSA) Program Operations Manual System and SSA reports, in support of his argument. *Id.* at 4-5. However, Plaintiff does not point to any case law to support the argument that an ALJ should not rely on validity testing. Plaintiff contends that the ALJ improperly speculated regarding the PAI and

MMPI-2 results. *Id.* at 4. Plaintiff further argues the ALJ should not have relied on the fact that Plaintiff failed the ToMM as evidence "alone" to discount other evidence. *Id.*

The ALJ properly considered the evidence of malingering and symptom exaggeration in this record. Plaintiff's own interpretations of the evidence do not diminish the ALJ's evaluation of three different validity tests and reports from five different doctors indicating they believed there was symptoms exaggeration and/or malingering. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004 (recognizing that when the evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). The ALJ's evaluation was reasonable and supported by substantial evidence in the record. As such, Plaintiff is not entitled to remand on this basis.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting his symptom claims. ECF No. 13 at 17-21. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The

claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

First, the ALJ found that Plaintiff's inconsistent testimony diminished the credibility of his symptom complaints. Tr. 365. In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Moreover, evidence that the claimant was motivated by secondary gain is sufficient to support an ALJ's rejection of testimony. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992).

Here, the ALJ noted that Plaintiff made inconsistent statements and had varying performance on examination. Tr. 365. Dr. Cline determined that Plaintiff was malingering and may be doing so for secondary gain. Tr. 864-65. The ALJ noted multiple inconsistencies in Plaintiff's testimony regarding his ability to attend appointments alone, and inconsistencies with the record regarding his ability to use public transportation and why he was not attending treatment. Tr. 364-65. Plaintiff made inconsistent statements about other topics as well, such as how much time he spends on the computer playing games, using the internet and filling out surveys for pay. Tr. 61, 64, 398-400, 403-04, 864. This was a clear and convincing reason to reject Plaintiff's symptom complaints.

Second, the ALJ found that Plaintiff engaged in symptom exaggeration. Tr. 366. The tendency to exaggerate provides a permissible reason for discounting Plaintiff's reported symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). There is sufficient evidence that suggests Plaintiff exaggerated his symptoms, including Dr. Cline's exam and opinion, Tr. 863, the failed validity test administered by Dr. Genthe, Tr. 871, and the failed validity test administered by Dr. Schneider, Tr. 251. This was a clear and convincing reason to reject Plaintiff's symptom complaints.

Third, the ALJ found that the objective medical evidence did not support the severity of disabling impairments Plaintiff alleged. Tr. 368. An ALJ may not

discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Mental status examinations are objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Here, the ALJ noted the objective evidence is not consistent with Plaintiff's alleged level of impairment. Tr. 368. The records demonstrate Plaintiff attended appointments alone and did not appear in distress, shaking or tearful when interacting with providers. *Id.* Mental status examinations demonstrated Plaintiff had an unkept appearance on occasion, and some abnormalities in his mood/affect, however he was generally alert, oriented and cooperative, with normal speech and thoughts, an appropriate affect and stable mood. Tr. 832, 838, 843-44, 849-50. Plaintiff has also had varying performance on examinations and testing, and some

of the results have been found invalid. Tr. 249-51, 849-50, 873-76. This was a clear and convincing reason to reject Plaintiff's symptom complaints.

Fourth, the ALJ found that the treatment Plaintiff sought was inconsistent with his allegations of disabling limitations. Tr. 368-69. An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Here, Plaintiff reported he did not continue mental health treatment on a regular basis because he had difficulty with transportation, but the ALJ noted records that indicate Plaintiff had the ability to find rides. Tr. 369. On another occasion, Plaintiff reported he was only seeking treatment to maintain benefits. *Id.*

Notably, Plaintiff was also able to obtain transportation to all of the appointments needed to continue his benefits. When he was in treatment, Plaintiff did not come up with any goals for treatment and was discharged for lack of progress. Tr. 823. This was a clear and convincing reason for rejecting Plaintiff's symptom claims.

Lastly, the ALJ found Plaintiff's activities of daily living are inconsistent with his symptom claims. Tr. 369. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ pointed to multiple activities that are inconsistent with Plaintiff's reported limitations, including his reported ability to handle his personal care, chores, and money. Tr. 369. Additionally, Plaintiff has reported completing surveys and playing video games for several hours per day. *Id.* Plaintiff testified the surveys require he engage in a variety of tasks, such as testing products

ORDER - 20

according to a schedule and then completing a survey. Tr. 398. Plaintiff reported

he prepares simple meals and spends two to three hours performing chores per day,

without needing reminders or encouragement to do so. Tr. 209.

In sum, the ALJ gave clear and convincing reasons, supported by substantial

evidence, to reject Plaintiff's symptom complaints.

## C. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly weighed the medical opinions of

Philip Barnard, Ph.D., Mark Duris, Ph.D., Thomas Genthe, Ph.D., and L. Paul

Schneider, Ph.D. ECF No. 13 at 7-17.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists." *Id.* (citations omitted).

ORDER - 21

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Barnard

Dr. Barnard performed a psychological exam of Plaintiff on April 17, 2014, at the request of DSHS. Tr. 851-55. Dr. Barnard reviewed a 2012 evaluation from Dr. Kouzes. Tr. 851. On exam, Plaintiff had normal appearance, speech and thought content. Tr. 854. Dr. Barnard noted Plaintiff was depressed and somewhat pessimistic and lackadaisical. *Id.* Plaintiff's memory, fund of knowledge, concentration, abstract thought and insight/judgment were abnormal.

ORDER - 22

*Id.* Plaintiff could not perform serial 7's or serial 3's and could not spell "world" forward or backward. *Id.* Dr. Barnard diagnosed Plaintiff with persistent depressive disorder. Tr. 852.

Dr. Barnard opined that Plaintiff had no to only mild limitations in most basic work activities, a moderate limitation in his ability to be aware of normal hazards and take appropriate precautions and marked limitations in two areas. Tr. 853. He opined Plaintiff had marked limitations in maintaining appropriate behavior in a work setting and completing a normal workday and work week without interruptions from symptoms. *Id.* Dr. Barnard opined Plaintiff would have the limitations for three to six months, with treatment. *Id.* Dr. Barnard also noted Plaintiff should be referred to vocational rehabilitation and that he "might be able to accomplish sedentary work of some type." *Id.* Dr. Barnard also opined Plaintiff's "weight problem" would moderately affect him. Tr. 852. The ALJ gave less weight to Dr. Barnard's opinion than the reviewing doctors' opinions. Tr. 371.

Plaintiff argues the ALJ erred in failing to fully credit Dr. Barnard's opinion, including his opinion that Plaintiff could not sustain a workday/workweek. ECF No. 13 at 8. As there are conflicting opinions, the ALJ only needed to provide specific and legitimate reasons for rejecting Dr. Barnard's opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned that Dr. Barnard had a limited understanding of the diagnostic picture. Tr. 371. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). The ALJ reasoned that Dr. Barnard saw Plaintiff on only one occasion and had few records or other evidence to review. Tr. 371. Dr. Barnard also could not have been aware of Dr. Cline's later finding of malingering. Tr. 371-72. This was a specific and legitimate reason to reject Dr. Barnard's opinion.

Second, the ALJ found that Dr. Barnard's opinion was based on Plaintiff's self-report, which contained inconsistencies. Tr. 372. A physician's opinion may also be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan*, 242 F.3d at 1149. As discussed further *infra*, the ALJ properly discounted Plaintiff's reported symptoms. Dr. Barnard had access to only one record, indicating he had to rely on his one-time examination of Plaintiff to form his opinion. In the various exams, Plaintiff reported differing information to Dr. Barnard and the other examiners regarding whether he had ever attempted suicide, his ability to perform chores and go shopping, and the amount of time spent completing surveys for money. Tr. 851, 858-59, 864, 869-70.

Plaintiff reported he can only stand 10 minutes at a time but has no physical diagnosis to support this claim. Tr. 851. Dr. Barnard opined Plaintiff's weight

moderately limited him, but he is not a physical specialist and he did not perform any physical exam.  Tr. 852.  While Plaintiff had some abnormalities on his mental status exam, his thoughts, speech and orientation were normal, and he could perform the digit span test.  Tr. 854.  Plaintiff had abnormal results including his memory and concentration, however, Dr. Barnard opined that Plaintiff had no to only mild limits in his ability understand, remember and persist at even detailed tasks.  Tr. 853.  Dr. Barnard opined Plaintiff had marked limits in his ability to complete a normal workday/work week, and to maintain appropriate behavior, but there is no objective evidence of such limitations.  *Id.*  Thus, the opinion appears to be based on Plaintiff's self-report.   This was a specific and legitimate reason to reject Dr. Barnard's opinion.

Third, the ALJ reasoned Dr. Barnard's opinion was temporary.  Tr. 372. Temporary limitations are not enough to meet the durational requirement for a finding of disability.  20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning").  Dr. Barnard opined the limitations would last three to six months.  Tr. 352.  This was a specific and legitimate reason to reject the opinion.

Fourth, the ALJ found Dr. Barnard did not give specific rationale for his opinion. Tr. 372. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. As discussed *supra*, Dr. Barnard gave marked limitations without an explanation for the limitations nor support from objective evidence. Tr. 853. This was a specific and legitimate reason to reject the opinion.

Lastly, the ALJ reasoned Dr. Barnard's opinion was internally inconsistent. Tr. 372. An ALJ may reject opinions that are internally inconsistent. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Barnard diagnosed Plaintiff with persistent depressive disorder and stated the depression symptoms only moderately limited Plaintiff. Tr. 852-53. Yet, Dr. Barnard gave two marked limitations, which is inconsistent with the moderate finding. Tr. 853. There is also no explanation as to why the marked limitations were given. *See* Tr. 372, 853.

The ALJ gave specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Barnard's opinions.

### 2. Dr. Duris

Dr. Duris performed a psychological exam on Plaintiff on March 4, 2015, at the request of DSHS.  Tr. 858-62.  Dr. Duris reviewed the evaluations from Dr. Barnard and Dr. Schneider.  Tr. 858.  On exam, Plaintiff had a normal appearance, but he had halting speech, vague answers, restrictive affect and a dysphoric mood.  Tr. 862.  Plaintiff's thought content, orientation, perception, memory and concentration were all normal.  *Id.*  Plaintiff's fund of knowledge and abstract thought were abnormal.  *Id.*  Plaintiff failed to complete a sufficient number of items to validate the results from the PAI.  Tr. 859.

Dr. Duris diagnosed Plaintiff with dependent personality disorder, avoidant personality disorder and a provisional diagnosis of borderline intellectual functioning.  Tr. 860.  Dr. Duris opined that Plaintiff had several mild and moderate limitations and had marked limitations in: 1) understanding, remembering and persisting in tasks with detailed instructions; 2) adapting to changes in a work setting; 3) communicating and performing effectively in a work setting; 4) completing a normal work day and work week without interruptions from symptoms; 5) maintaining appropriate behavior in a work setting; and 6) setting realistic goals and planning independently.  Tr. 861.  Dr. Duris opined the

limitations would last 12 months or longer.  *Id.*  The ALJ gave Dr. Duris' opinion less weight than the opinions of the reviewing doctors.  Tr. 371.  Because Dr. Duris' opinion conflicted with that of Dr. Cline Tr. 863-67, the ALJ was required to give specific and legitimate reasons for rejecting the opinion.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ reasoned that Dr. Duris had minimal records to review and did not have the knowledge that Plaintiff was later found to be malingering.  Tr. 371-72.  The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.  *See* 20 C.F.R. § 416.927(c)(6).  As Dr. Duris reviewed only two examinations and no longitudinal records, nor the evidence of other failed validity tests, this was a specific and legitimate reason to reject the opinion.  *See* Tr. 858.

Second, the ALJ found Dr. Duris based the opinion on one exam and primarily on Plaintiff's self-report.  Tr. 371-72.  A physician's opinion may be rejected if it is too heavily based on a claimant's properly discounted complaints.  *Tonapetyan*, 242 F.3d at1149.  On exam, Plaintiff's thought content, orientation, perception, memory and concentration were all normal.  Tr. 862.  Despite the normal results, Dr. Duris found Plaintiff had a marked limitation in understanding, remembering and carrying out detailed instructions. Tr. 861.  Dr. Duris' report is

ORDER - 28

comprised primarily of statements regarding what Plaintiff "reported" and "indicated." Tr. 858-60. Plaintiff argues it is an "extensive assessment," but the cited assessment is all based on Plaintiff's self-report. ECF No. 13 at 11. This was a specific and legitimate reason to reject the opinion.

Third, the ALJ reasoned that Dr. Duris did not provide any specific explanation as to the basis for the marked limitations. Tr. 372. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. The ALJ's reasoning is consistent with the overall normal mental status exam, and lack of further explanation for the marked limitations. *See* Tr. 585-60.

The ALJ provided specific and legitimate reasons, supported by substantial evidence, to reject Dr. Duris' opinions.

*3. Dr. Genthe*

Dr. Genthe examined Plaintiff on February 17, 2017, at the request of DSHS. Tr. 868-76. Dr. Genthe did not review any of Plaintiff's records. Tr. 868. Dr. Genthe diagnosed Plaintiff with persistent depressive disorder, social anxiety disorder and PTSD. Tr. 870. Dr. Genthe opined Plaintiff had marked limitations in: 1) understanding, remembering and persisting in tasks with detailed instructions; 2) adapting to changes in a routine work setting; 3) asking simple

ORDER - 29

questions or requesting assistance; 4) maintaining appropriate behavior in a work setting; and 5) completing a normal workday and work week without interruptions from psychologically based symptoms. Tr. 871. Dr. Genthe opined the limitations would last six to nine months. *Id.* The ALJ gave Dr. Genthe's opinion less weight than he gave the reviewing doctors. Tr. 371.

First, the ALJ reasoned Dr. Genthe reviewed no treatment records and lacked the evidence of malingering from Dr. Cline. Tr. 371-72. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). As Dr. Genthe lacked any records and did not have knowledge of Dr. Cline's finding of malingering the month prior, this was a specific and legitimate reason to reject the opinion. Tr. 868.

Second, the ALJ found Dr. Genthe's opinion was temporary. Tr. 372. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); 42 U.S.C. § 423(d)(1)(A) (same); *Carmickle*, 533 F.3d at 1165 (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). Dr. Genthe opined the limitations would last

only six to nine months.  Tr. 871.  This was a specific and legitimate reason to reject the opinion.

Third, the ALJ observed that the validity testing indicated Plaintiff had endorsed items to portray himself in an especially negative matter, and some deliberate distortion may be present.  Tr. 372.  As discussed *supra*, evidence that suggests malingering is relevant to the disability determination process.  This was a specific and legitimate reason to reject the opinion.

Lastly, the ALJ pointed to contradictions within Dr. Genthe's opinion.  Tr. 372-73.  An ALJ may reject opinions that are internally inconsistent.  *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996).  An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources.  *Tommasetti*, 533 F.3d at 1041.  Dr. Genthe stated Plaintiff could not work, but also stated he would perform best on simple tasks, and though he stated Plaintiff had social and emotional deficits, he noted Plaintiff was cooperative, friendly and had normal speech and conversation.  *Id*.  While these inconsistencies may not be significant contradictions, any error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to reject Dr. Genthe's opinion.

//

*4. Dr. Schneider*

Dr. Schneider performed an evaluation of Plaintiff on October 4, 2011. Tr. 302. On exam, Plaintiff reported he was down and had been depressed, his IQ scores fell in the borderline to low average range, and his MMPI scores were invalid. Tr. 304-07. Dr. Schneider diagnosed Plaintiff with major depressive disorder, PTSD, social phobia, eating disorder, disorder of written expression, dependent personality disorder, avoidant personality disorder and obesity. Tr. 307. Dr. Schneider opined that Plaintiff needed treatment, assistance such as "hands on" vocational training and job coaching, and he should apply for SSI. Tr. 308. The ALJ gave Dr. Schneider's opinion less weight than the weight of the reviewing doctors. Tr. 370-71.

First, the ALJ found Dr. Schneider lacked understanding of Plaintiff's longitudinal history, as he did not have any records to review. Tr.370-71. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Given the lack of records, the ALJ reasoned Dr. Schneider based his opinion on Plaintiff's discredited subjective report. Tr. 370-71. As discussed *supra,* Plaintiff's claims were validly rejected and thus this was a specific and legitimate reason for rejecting Dr. Schneider's opinion. *See Tonapetyan*, 242 F.3d at 1149.

Second, the ALJ found that the invalid test results, when considered in the context of the other evidence, indicated Plaintiff had over reported symptoms to portray himself as more limited than he is. Tr. 371. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. While Dr. Schneider interpreted the invalid results as a "cry for help," the ALJ found that was not consistent with the other evidence, to which Dr. Schneider did not have access. Tr. 371. This was a specific and legitimate reason to reject the opinion.

Third, the ALJ reasoned Dr. Schneider was acting in an advocate role, rather than providing an objective assessment. *Id.* Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041. While there is no evidence of impropriety on Dr. Schneider's part, the ALJ noted that the test results were not entirely consistent with the significant limitations posed by Dr. Schneider. Tr. 371. Dr. Schneider opined Plaintiff needed vocational training and job coaching, but found Plaintiff had IQ scores in the borderline to average range, normal concentration and attention. Tr. 305-06. While he performed in the less than tenth percentile on the Rey Complex Figure test, Plaintiff performed normally on the Wisconsin Card Sorting Test, showing he can make good decisions and learn from experience. Tr. 306. Plaintiff also reported he could cook, apply for

ORDER - 33

jobs online and could play video games 12 hours or more a day.  Tr. 305.

Plaintiff's test scores and reported activities are inconsistent with Dr. Schneider's

opinion, and he did not provide further explanation for his opinion such as why

hands on training is needed.

The ALJ provided specific and legitimate reasons, supported by substantial

evidence, for rejecting Dr. Schneider's opinion.  Plaintiff is not entitled to remand

on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as

the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 16**, is

**GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

//

//

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 24, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 35